[No. B152582. Second Dist., Div. Six. Oct. 24, 2002.]

SULLY-MILLER CONTRACTING COMPANY, Plaintiff and Appellant,
v.
GLEDSON/CASHMAN CONSTRUCTION, INC., et al., Defendants and Respondents.

[And six other cases.*]

---

*South Coast Concrete Construction, Inc. v. Gledson/Cashman Construction, Inc. (No. 1001079); Hanson Aggregates West, Inc. v. Gledson/Cashman Construction, Inc. (No. 1001333); MNS Engineers, Inc. v. Gledson/Cashman Construction, Inc. (No. 1002805); Phoenix Paving Co., Inc. v. Gledson/Cashman Construction, Inc. (No. 1002920); Alcorn Fence Co. v. Gledson/Cashman Construction, Inc. (No. 1003987); Ralph Cherrie Masonry v. Gledson/Cashman Construction, Inc. (No. 1035950).

**COUNSEL**

Lanak & Hanna, Craig P. Bronstein and William J. Allard for Plaintiffs and Appellants Sully-Miller Contracting Company and Hanson Aggregates West, Inc.

Hunter, Molloy & Salcido, John Logan Hunter and Richard Salcido for Defendant and Respondent Gledson/Cashman Construction, Inc.

J. Michael Pisias, Jr., for Defendant and Respondent Ulico Casualty Company.

**OPINION**

**PERREN, J.**—Appellants signed documents agreeing to dismiss these actions and release their claims against respondents and another defendant in

exchange for the payment of money. Those documents, which were prepared by one of the respondents' attorneys, did not call for any signatures other than appellants', nor did they specify who was obligated to make the payments on which the agreements were conditioned. When no payment was forthcoming, appellants gave notice that they were withdrawing their agreement to settle. Several months later, respondents attempted to tender payment, which appellants refused.

Respondents subsequently moved for settlement under Code of Civil Procedure section 664.6 (hereafter section 664.6), contending that the documents at issue were enforceable as written settlement agreements. After appellants pointed out that the documents were not signed by the parties as required by that section, one of the respondents simply added its signature to the end of both documents. The trial court granted respondents' motions, and entered judgment accordingly.

We agree with appellants that the documents they signed are not enforceable as settlement agreements under section 664.6. As drafted, those documents were merely unilateral offers to settle that were revoked prior to their acceptance by the tender of payment. Moreover, they were not signed by the parties as required by section 664.6. Accordingly, we reverse.

*Facts and Procedural Background*

Appellants Sully-Miller Contracting Company (Sully-Miller) and Hanson Aggregates West, Inc. (Hanson), are building material suppliers that brought actions against a general contractor, respondent Gledson/Cashman Construction, Inc. (Gledson), Gledson's surety, respondent Ulico Casualty Company (Ulico), and Carpinteria Unified School District (District),[1] to recover for unpaid materials on a construction project at Carpinteria High School. Appellants sued Gledson and Ulico to recover against a public works payment bond and sued the District to enforce a stop notice.

On June 6, 2000, Gledson's attorney, John Logan Hunter, wrote to appellants' attorney, Craig P. Bronstein, "confirm[ing] the agreement reached in our telephone conversation last week." The letter stated that the District would issue joint checks to Gledson and Hanson for $17,900, and to Gledson and Sully-Miller for $34,500, in exchange for which appellants would "provide Conditional Waivers and Releases upon Final Payment along with dismissals and executed Settlement Agreement[s] in the forms enclosed." The documents prepared by Hunter for appellants' signatures

---

[1]The District is not a party to this appeal.

provided that "for and in consideration for" the payments, appellants would dismiss and release all claims against respondents and the District. Those documents contained signature blocks for appellants only and did not specify which of the defendants, if any, was responsible for making the payments to appellants.

On June 20, Bronstein faxed Hunter copies of the executed documents on behalf of Sully-Miller with a fax cover sheet stating: "Here are the executed releases. As we discussed, this is contingent on payment being received by Friday June 24, 2000. . . . Please advise if this is not possible." On June 21, Bronstein faxed copies of the executed documents on behalf of Hanson with a cover sheet stating: "Here are the executed releases. Please have check cut ASAP. Cut off on this one is next Friday. Thank you."

Appellants did not receive their payments as contemplated. On July 17, 2000, the District notified appellants that "at this time the funds being withheld by the District pursuant to the stop notices filed by all claimants is insufficient to satisfy the amounts stated in your conditional releases, as well as the remaining stop notices. For this reason we cannot make payment upon your conditional releases." On July 19, Hunter requested immediate payment from the District, noting that "[t]he premise of [Gledson's] settlements [with appellants] was that funds would timely be released . . . ." The District responded through its counsel that "[w]e realize that Gledson/Cashman and these vendors have reached an agreement, however, the District is not a party to that agreement and has a separate statutory duty in regard to the moneys withheld due to the numerous stop notices." The District further noted that Gledson could have resolved the problem by filing additional stop notice release bonds, but had refused to do so.

By letter dated August 7, 2000, appellants notified respondents that they were revoking and withdrawing their offers to settle for the previously stated amounts because "[i]t has now been over two months since [appellants] agreed to discount [their] claim[s] . . . in expectation of immediate payment of the agreed-upon amount" and because appellants had "incurred additional costs as a result of the delay . . . ." Appellants submitted increased demands reflecting these additional costs, which included accrued interest and attorney fees. Gledson did not respond to appellants' August 7 letter or to subsequent letters sent the following October and November.

On January 24, 2001—over seven months after appellants had returned signed copies of the documents prepared by Gledson's attorney—Gledson submitted checks to appellants in the form and amounts provided in the

earlier documents, along with a letter from Hunter stating that "[w]e are fully cognizant of your recent position concerning the agreement[s] reached between our respective clients and believe the enclosed draft[s] fulfill[] our obligations thereunder. If you dispute the settlement, please advise and we will move to enforce the written agreement[s] . . . ."

Bronstein promptly returned the checks along with a letter reiterating that appellants had withdrawn their offers to settle for the previously stated amounts. Bronstein noted that appellants had never received any response to their August 7, 2000, revocation letters or their subsequent correspondence, and that appellants had been "forced to incur substantial additional attorneys' fees related to the delay in payment, including those related to our being forced to participate in various hearings in the consolidated cases."

Respondents subsequently moved to enforce the documents as settlement agreements under section 664.6. Appellants opposed the motions, contending that the documents were not enforceable under that section because (1) they were merely unilateral offers to settle that had been revoked prior to acceptance, and (2) they were not signed by all of the parties as required by the statute. In an effort to belatedly comply with the signature requirement, Gledson simply tacked on its undated signature at the end of both documents and submitted them in reply to appellants' opposition.

After a hearing, the trial court granted respondents' motions without comment and entered judgment pursuant to the terms stated in the documents. The court also ordered each of the appellants to pay Gledson $473 pursuant to an attorney fee provision in the documents.

*Discussion*

I.

*The Documents Are Not Enforceable as Settlement Agreements Under Section 664.6 Because They Were Merely Unilateral Offers to Settle That Were Revoked Prior to Their Acceptance*

█   We review the trial court's ruling on a section 664.6 motion de novo for errors of law. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 815 [71 Cal.Rptr.2d 265].) Section 664.6 provides in pertinent part that "[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . for settlement of the case, . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." █   Aside from the signed writing requirement,

the writing must embody an enforceable contract between the parties: "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. [Citation.]" (*Weddington*, at pp. 810-811.)

██ "A bilateral contract consists of mutual promises, made in exchange for each other by each of the two contracting parties." (1 Corbin on Contracts (rev. ed. 1993) § 1.23, p. 87.) A contractual promise is defined as "an expression of commitment to act in a specified way, or to bring about a specified result in the future, or to take responsibility that the result has occurred or will occur, communicated in such a way that the addressee of the expression may justly expect performance and may reasonably rely thereon." (*Id.*, § 1:13, p. 35.) ██ In the documents at issue here, appellants promised to dismiss and release their claims against respondents and the District in exchange for the payment of money. But neither respondents nor the District promised to make any payments to appellants. Indeed, it is undisputed that respondents were not obligated to pay anything or to give anything else in consideration for appellants' promise, and that the District never promised to make any payments on respondents' behalf.

██ "In essence, mutuality of obligation must exist where the exchange of promises between promisor and promisee is meant to represent the contract's consideration." (*Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 637 [162 Cal.Rptr. 52]; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 228, pp. 236-237 ["[T]he doctrine [of mutuality of obligation] is that the promises on each side must be *binding obligations* in order to be consideration for each other"].) ██ Since respondents made no promise in exchange for appellants' promises and offered no other consideration, those promises constituted unilateral offers to settle that were revocable until accepted by the tender of payment: "A 'contract' which lacks mutuality is often treated as a mere offer, revocable until accepted, and binding if accepted prior to revocation or other termination." (1 Witkin, *supra*, § 228, p. 237; see also 1 Williston Treatise on the Law of Contracts (4th ed. 1990) § 5:8, p. 666 ["[O]ffers, unless . . . given for a consideration, may be revoked by the offeror at any time prior to the creation of a contract by acceptance. [Fn. omitted.]"].) Appellants revoked their offers before any payment was tendered, leaving nothing to be enforced under section 664.6. Even if we were to conclude that appellants promised to hold their offers open until June 24, 2000, and June 31, 2000, they were not bound by that promise. Where no consideration is given for an offer, ". . . even though the offeror specifies in his offer a definite time within which acceptance may be made, the offeror

may, nevertheless, revoke his offer within that time period." (1 Williston, *supra*, pp. 666-667, fn. omitted.) The trial court thus erred in enforcing the offers as settlement agreements under section 664.6.

## II.

*The Documents Were Not Signed by the Parties in the Manner Contemplated by Section 664.6*

A written settlement agreement is not enforceable under section 664.6 unless it is signed by all of the parties to the agreement, not merely the parties against whom the agreement is sought to be enforced. (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 304-306 [87 Cal.Rptr.2d 822] [letter reciting settlement terms held not enforceable under § 664.6 because it was not signed by all parties to the purported settlement].) The documents at issue here, which were prepared by Gledson's attorney, only call for appellants' signatures. Gledson, nevertheless, has belatedly added its undated signature to the end of both documents in an effort to render them enforceable under section 664.6.

We conclude that a party cannot satisfy section 664.6's signature requirement simply by adding its signature to a document that does not call for it. The purpose of section 664.6's signed writing requirement—to provide unequivocal proof of the parties' intent to enter a binding settlement—would be frustrated if courts enforced written agreements pursuant to that section where, as here, the agreement only contemplates the signature of one party. Section 664.6 requires the parties' signatures because "settlement is such a serious step that it requires the client's knowledge and express consent. (1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 194, pp. 221-222.)" (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 583 [41 Cal.Rptr.2d 878, 896 P.2d 171].) A party's signature fails to convey such knowledge and consent unless it is contained in a document that was clearly intended by that party to be a binding settlement agreement.

Because of its summary nature, strict compliance with the requirements of section 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement. The ad hoc addition of a party's signature that was neither contemplated in the original document nor bargained for is simply insufficient to render the document enforceable under section 664.6.

### Conclusion

We recognize that settlement of civil actions is the lifeblood of a crowded calendar. Litigants should be encouraged to settle, and courts should seek

creative ways to fully and finally resolve matters consistent with the wishes of the parties as they shall agree. But courts cannot force parties to settle when they have not entered a binding agreement to do so. Basic principles of contract law dictate that a party cannot be bound by a promise given without consideration, and that a party who offers to settle may not be held hostage to the whim of the offeree concerning the time and manner of acceptance. Moreover, a party who wishes to invoke the summary procedure of section 664.6 to enforce a written settlement must strictly comply with the signature requirement of that section.

The judgment is reversed. Appellants are awarded costs on appeal.

Gilbert, P. J., and Yegan, J., concurred.