Filed 12/28/15  Tanasescu v. Raphs Grocery Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| SIMONA TANASESCU,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>RALPHS GROCERY COMPANY et al.,<br><br>    Defendants and Respondents. | G051032<br><br>(Super. Ct. No. 30-2013-00626193)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

The opinion filed November 30, 2015, is modified by adding a new footnote at the bottom of page 10, following the sentence ending ". . . any other evidence to support her duress claim."  The new footnote reads:  "We note plaintiff failed to file a motion to compel discovery responses.  Accordingly, her claim rings hollow that the substitution of Ralphs for Kroger amounted to duress by hindering her discovery efforts.  As noted, self-represented plaintiffs must adhere to ordinary court procedures (*ibid*.), and therefore cannot claim prejudice or duress when they ignore those procedures.  Similarly, plaintiff is mistaken that defendant's allegedly incomplete or missing 'd.b.a. paperwork' somehow precluded it from defending the action under Business and Professions Code section 17918.  That section by its terms and annotations does not apply to tort actions."

The modification does not change the judgment. Appellant's rehearing petition is denied.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

IKOLA, J.

Filed 11/30/15  Tanasescu v. Ralphs Grocery Co. CA4/3 (unmodified version)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SIMONA TANASESCU, | |
| Plaintiff and Appellant, | G051032 |
| v. | (Super. Ct. No. 30-2013-00626193) |
| RALPHS GROCERY COMPANY et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Gregory Munoz and Craig L. Griffin, Judges.  Affirmed.

Simona Tanasescu, in pro. per., for Plaintiff and Appellant.

Wolfe & Wyman, Gregg Vorwerck and David C. Olson for Defendants and Respondents.

\*                \*                \*

Simona Tanasescu (plaintiff) appeals from the trial court's entry of judgment enforcing the settlement agreement she entered in open court (Code Civ. Proc., § 664.6) to resolve her slip and fall claim against Ralphs Grocery Company (Ralphs), doing business as Food 4 Less. Plaintiff contends the trial court and its clerical staff made critical errors before she entered the settlement agreement, including allowing Ralphs to defend the case when plaintiff insisted the proper defendants were Ralphs' parent company, Kroger or Kroger West, and its subsidiary Food 4 Less. The trial court heard and rejected these contentions before plaintiff later entered into a settlement agreement. As we explain, plaintiff's decision to settle the case precludes her from challenging the court's law and motion rulings preceding the settlement.

Plaintiff also contends the purported settlement included technical legal provisions she did not understand, and therefore it is void because she did not agree to those terms. Additionally, plaintiff asserts the settlement is void for duress because the erroneous law and motion rulings defendant obtained wore down her stamina to litigate the case, rendering the agreement involuntary. She insists other factors like the noisy court cafeteria in which she discussed the terms of the settlement with opposing counsel also caused duress, vitiating the agreement. Plaintiff's claims are without merit, and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff slipped and fell in a Food 4 Less grocery store in February 2011. She retained an attorney who filed a personal injury complaint based on premises liability and negligence in January 2013, naming Food 4 Less and Kroger West as defendants with "a business entity form unknown." Ralphs answered the complaint, explaining it had been "erroneously sued and served as Kroger West and erroneously sued and served as Food 4 Less."

2

Plaintiff attempted to strike the answer, asserting that because she had not named Ralphs as a defendant, it was not a proper party to the action and should not be allowed to intervene. The trial court rejected plaintiff's attempt to preclude Ralphs from defending the action. Plaintiff, however, refused to concede the issue and raised it again at a hearing during discovery proceedings after the matter was assigned to a new judge.

Ralphs sought to compel plaintiff to submit to a medical exam, but plaintiff opposed the motion by again attempting to strike the answer. Plaintiff did not file a motion for reconsideration of the trial court's earlier ruling (Code Civ. Proc., § 1008), but instead simply filed a new strike motion.

Plaintiff asserted Ralphs was still "a stranger to the action." She claimed the court staff erred by accepting the answer at the filing window and substituting Ralphs as a defendant in the court record, and that these actions constituted fraud upon the court. The legal theory for plaintiff's opposition to Ralphs as a party is unclear, but she insisted it was important that separate listings in the Secretary of State's records for The Kroger Co. (Kroger), Food 4 Less, and Ralphs meant they were "separate business entities holding separate business licenses." She did not address the relationship of Ralphs and Food 4 Less as subsidiaries of Kroger, nor the manner in which the three companies may have operated portions of each others' operations. Ralphs claimed it operated the Food 4 Less in which plaintiff fell. Plaintiff argued Ralphs could not properly use the "doing business as" (d.b.a.) designation as to Food 4 Less because the d.b.a. paperwork Ralphs had filed with one or more licensing authorities was somehow incomplete or insufficient.

It appears plaintiff, now self-represented, was unhappy with the attorney who filed her complaint, and believed he may have colluded with Kroger or Food 4 Less on an initial low settlement offer, which she rejected. According to plaintiff, Ralphs fraudulently entered the lawsuit to punish her for failing to settle. She asserted generally that "fraud vitiates everything," and included the court clerks' allegedly erroneous actions as examples of fraud. She "believe[d] Ralphs' unlawful intervention in this matter is in

3

retaliation [for] Plaintiff's refusal to settle her injury claim upon the offer of $5,000 . . . ." Plaintiff asserted that because Ralphs was not a party, she did not have to comply with its discovery requests, which she sought to quash. She also sought $10,000 in sanctions against Ralphs and its attorney "for the pain and suffering Plaintiff and her family experienced while Plaintiff was forced to prepare this motion to strike [Ralphs'] frivolous answer."

Noting she was not an attorney, plaintiff based the sanctions amount on having "to spend free time and sleepless nights to research the law and investigate the facts [to oppose] Ralphs' frivolous answer to [the] complaint," and the resulting "anxiety and extreme hardship" affecting her and her child when plaintiff "became distressed and consumed with preparing this motion within the statute."

The trial court denied plaintiff's motion to strike the answer and to quash Ralphs' discovery requests, and denied her sanctions request. The court patiently heard plaintiff's lengthy argument at the hearing on the motion in February 2014, but observed, "Well, if they didn't file a proper d.b.a. [form,] I don't think it's going to affect your judgment if you get a judgment." In any event, the court explained, "I know you're saying all of this about the right party or not . . . , [but] that issue is not in front of me right now. It's been decided." As counsel for Ralphs noted at the hearing, "We'[d] been going on just fine until we wanted a defense medical exam. [¶] Now, she[] goes back to the original [improper party] issue that's been decided way back when. [¶] . . . [¶] That has been decided. She hasn't asked to reconsider. She hasn't sought a writ. She [h]asn't done anything to avoid that decision."

Plaintiff suggested the change or discrepancy in named defendants affected her ability to obtain discovery. But the trial court noted in its ruling that she conceded there were defects in her subpoenas and that she represented she "has reissued the subpoenas to the correct addresses." The court also explained at the hearing, "Well, and,

4

again, there's discovery processes that you can employ, and if they're not being complied with, you can file motions."

Plaintiff then requested permission to amend her complaint, but did not specify the nature of the amendment. The court responded, "You can bring a motion for that or if you can get a stipulation, that's fine." But as the court explained, an amendment "[is] not in front of me. I can't just mak[e] rulings on the bench for things that are not properly before me."

Plaintiff interjected at another point in the proceedings, "It's prejudicial. I don't have anything to show, and it's a lot of evidence. I'm asking for the real evidence that I saw in front of me, [including an employee's] disposable camera [that] took pictures of the water on the floor, whatever was left there. . . . [¶] It was tampered with, and they made another picture." The court reiterated, "Well, again, it has to be done by motion. If there's destruction of evidence, those sorts of things can be handled." The court concluded, "What's in front of me is a Motion to Compel your physical examination and all the requirements are met. So that's why I'm granting their motion."

The record does not indicate whether plaintiff submitted to the exam or whether she further pursued her own subpoenas or other discovery requests. Instead, the parties settled the case on the record the next month at a mandatory settlement conference. The trial court expressly noted, "The record should also reflect that I participated in the settlement discussions this morning. I believe it is a fair and good settlement for all the parties."

The court instructed counsel for Ralphs to "state the terms of the settlement" for the record, which counsel recounted as follows: "Mrs. Tanasescu will be responsible for all liens. We believe that there is a lien from Kaiser and a possible lien from her first attorney; that she will complete all paperwork that we will send her; that the case is settled for $12,000 payable by my clients to Mrs. Tanasescu, but it will not be payable until we get clearance from all the liens and [in]struction letters for who to pay.

5

There will be a 1532 — 1542 waiver. [¶] Mrs. Tanasescu will be responsible for all of her costs and fees, and we will take similar[] responsibility for all of our costs and fees. This is intended to be a complete and total settlement of all her claims stemming from that accident of February 6th, your Honor."

The court confirmed with plaintiff, "[Y]ou understand this $12,000 is a full and final settlement of all claims that you have arising out of this matter?" She answered, "I do understand," but added, "[E]xcept there's no lien from my former attorney." The court explained to plaintiff, "That's fine, but they need some kind of a release to make sure it [h]as been concluded." When plaintiff volunteered, "I can write that. I take full responsibility for anything," opposing counsel explained, "Unfortunately we need something from the attorney relieving us before we can issue the funds." Counsel, like plaintiff, was aware that plaintiff had attached as an exhibit earlier in the proceedings an e-mail from her former attorney in which the attorney wrote: "I got them to increase their offer to $5,000.00. There will be no more money. I will reduce my attorney fee[]s and costs to $1500.00 and will pay Kaiser approximately $1500.00, leaving you with $2,000.00 . . . ."

When plaintiff asked, "I just wanted to understand clearly what is the lien regarding my former attorney," the court explained that Ralphs "[i]s going to need some kind of a release saying that the attorney lien — [your former attorney]'s not making a lien or it has been satisfied. Apparently he has a potential lien. Whether he's made it or not, he has a potential lien on the settlement." Plaintiff suggested Ralphs "can put at this time my former attorney did not put any lien." Counsel for Ralphs explained, "If your former attorney says that, then that's fine. I want him to say it in writing to protect my client," and plaintiff agreed, "Okay."

Counsel further explained, "I'll be preparing the paperwork, sending it to you probably in the next three days, four days. It will set up all the terms and have some documents for you to sign . . . . [¶] And then I'll also put in the letter that I am sending

6

to your former attorney, telling him it settled, [to] assert any liens if he has [one], talk to you about it, but I need clearance from him and Kaiser and any other liens we can find, I don't think there are any, before I can issue the funds; do you understand that?"

Plaintiff responded, "I understand," and when the trial court added, "I want you to be certain you understand it's a full and final settlement of all your claims arising out of this incident," plaintiff assured the court, "I understand."

The trial court set a date in 60 days to dismiss the case upon the parties completing the terms of the settlement, but the date passed because plaintiff refused to sign the release of her claims as called for in the settlement agreement. Ralphs filed a motion to enforce the settlement (Code Civ. Proc., § 664.6), which the trial court granted, entered judgment in accordance with the agreement, and dismissed the case. Plaintiff now appeals.

II

DISCUSSION

"When the party asserting settlement prevails . . . , the Legislature has specifically authorized the trial court to enter judgment in accordance with the agreement." (*Irvine v. Regents of University of California* (2007) 149 Cal.App.4th 994, 1000-1001.) Specifically, section 664.6 provides: "If parties pending litigation stipulate, in a writing signed by the parties outside the presence of the court *or orally before the court*, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Italics added.)

Plaintiff contends she is not bound by the settlement because of alleged errors the trial court and its clerical staff made before she entered the settlement. Specifically, she claims the court erred by denying her motion to strike Ralphs' answer because it was an improper party, and that the court erred by filing the answer and updating court records to reflect Ralphs as the defendant in the case. Plaintiff's contentions have no merit because she settled the case.

The purpose of a settlement is to resolve the parties' claims either without resort to litigation or by withdrawing the matter from whatever litigation has occurred to that point. The "[s]trong public policy in favor of the settlement of civil cases gives the trial court, which approves the settlement, the power to enforce it." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1357 (*Osumi*).) Once the parties have orally reached a settlement before the court, they may not escape their obligations by refusing to sign a written agreement. (*Id*. at p. 1360.)

A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 36.) Here, plaintiff did not reserve in the settlement any right to challenge the trial court's earlier rulings or the clerks' administrative actions. To the contrary, as the trial court repeatedly reviewed with plaintiff, the settlement constituted a "full *and final*" resolution of her claims. If she had ongoing concerns about the trial court's rulings or the clerks' conduct preceding the settlement, she could have continued to litigate the case to a final judgment and appeal based on those concerns. But by settling the case without reserving a right to challenge those matters on appeal before the settlement became final, she waived the right to assert those claims. A party may not attempt to revoke a valid settlement and refuse to sign a release or other written documents contemplated under the settlement; rather, the settlement will be enforced. (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1302.) There is no merit to plaintiff's attempt to unilaterally dissolve the settlement or escape its terms.

Plaintiff asserts the settlement is not binding because as a non-lawyer she did not know or understand the import of a statutory citation counsel for Ralphs referenced when placing the settlement terms on the record, specifically Civil Code section 1542. Put another way, she asserts she did not agree to the settlement terms because she did not understand what they entailed. Public policy encourages only the

8

"voluntary" settlement of litigation; involuntary settlements are not binding. (*Osumi*, *supra*, 151 Cal.App.4th at p. 1359.)

Plaintiff's claim is without merit. Counsel's bare reference to "a 1532 [*sic*] — 1542 waiver" did not defeat the settlement. Civil Code section 1542 provides that "[a] general release does *not* extend to claims which the [person] does not know or suspect to exist in his or her favor at the time of executing the release . . . ." (Italics added.) Plaintiff argues the settlement is not binding because she did not know it would require her to release claims against Ralphs she did not know about at the time of the settlement. She does not indicate what those claims might be, but her claim fails for the simple reason that the settlement did not call for such a release. Rather, as the trial court explained to her on several occasions at the time she agreed to the settlement, she was not subjected to a general release, but instead released "all claims that you have *arising out of this matter*" and "all claims *arising out of this incident*." (Italics added.)

In opposing entry of judgment based on the settlement below, plaintiff argued that the purported "1542 waiver" somehow wrongly prevented her from later pursuing "my claims for wrongdoings that came during this, uh, proceedings," and *that* is why she refused to sign the release. But as the trial court explained, she released in the settlement all her claims "arising out of this matter." In any event, the trial court also explained that claims for asserted "wrongdoings" during litigation are independently barred by the litigation privilege (Civ. Code, § 47). As the trial court elaborated, "You can't sue them for what happened in litigation. It's covered by litigation privilege. There's no way to sue them for it, and it all arises out of it. You released it. It's done."

Plaintiff protested, "No, no. I did not release them from the claims that they are not, uh — [that] this court doesn't have jurisdiction." Plaintiff apparently envisioned a loophole or means around the settlement in which she could later sue Ralphs or Kroger or Food 4 Less based on her claim the trial court lacked "jurisdiction" because it erred in finding Ralphs was entitled to defend the action. As we have explained, that

9

position is inconsistent with her agreement to settle the case. And as the trial court pointed out, under the litigation privilege, there is no basis on which her claim for alleged wrongdoings during litigation would be successful. (Civ. Code, § 47.)

But more to the point, as the trial court also observed, the plain terms of plaintiff's agreement precluded her objection to signing the release. Simply put, she settled "all claims arising out of this matter" and therefore could not refuse to fulfill the settlement and sign the release based on the notion she still had viable claims arising from the litigation. The litigation itself arose from her alleged slip and fall incident, and therefore any purported claims arising from the litigation were precluded by her settlement of "all claims . . . arising out of this matter" and "arising out of this incident." The plain, unambiguous terms of her agreement rendered her refusal to sign the release untenable. The trial court implicitly found her assertion that the "1542" language was confusing was an excuse to evade the terms she agreed to, and we cannot second-guess that determination. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896.) [trial court entitled to find as a factual matter what terms the parties agreed to, and whether they entered a binding settlement]; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174 [same].)

Plaintiff also contends the settlement agreement is void based on duress or coercion. She argues that by continually and wrongly maintaining it was the proper party to defend the action and by pursuing and obtaining other law and motion rulings, Ralphs wore down her willingness as a self-represented party to litigate the case. According to plaintiff, these litigation tactics left her no choice but to settle. We are not persuaded. A party appearing in propria persona is entitled to no special allowances, but instead is held to the same rules governing other litigants. (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) Plaintiff's lack of success in litigating her case is not evidence of coercion or duress, and plaintiff failed to offer any other evidence to support her duress claim.

We find similarly unavailing her claim that she did not enter the settlement agreement freely based other factors like noise in the courtroom cafeteria when she

10

discussed the matter with opposing counsel.  The trial court patiently reviewed the terms of the settlement on the record with plaintiff, and she stated on several occasions that she understood and agreed to the terms.  The trial court properly concluded she was bound by the settlement agreement.

### III

### DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.

11