Filed 9/30/16  Marriage of Corona CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of ARTHUR and BONNIE CORONA. | B259746, B266351 |
| ARTHUR CORONA et al., | |
| Respondents, | (Los Angeles County Super. Ct. No. BD386697) |
| v. | |
| BONNIE L. CORONA, | |
| Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Mark A. Juhas, Judge.  Judgment reversed; order vacated.

Rombro & Associates, S. Roger Rombro and Michael T. Ungar for Appellant.

Law Offices of W. Paul Tobin and W. Paul Tobin for Respondents.

* * * * * *

In this marital dissolution action, Bonnie and Arthur Corona entered into a marital settlement agreement (MSA) in 2008.[1]  The court entered a judgment on reserved issues incorporating the MSA approximately six years later, over Bonnie's objections.  Bonnie argues the court erred in entering judgment on the MSA without a motion by a party, and moreover, the court should have considered her arguments for setting aside the MSA before reducing it to a judgment.  She also appeals from the court's order denying her motion to set aside the judgment.  We reverse the judgment on reserved issues, vacate the order denying her set aside motion, and remand for further proceedings.

## BACKGROUND

### 1.  Proceedings in the Dissolution Action

The parties married in 1959.  Arthur filed a petition for dissolution of the marriage in April 2003.  The court entered a status-only judgment in January 2007.

On September 19, 2008, the parties entered into the MSA, which they memorialized on Los Angeles Superior Court form FAM 024(A) (Stipulation/Settlement Agreement).  The MSA divided assets between the parties.  Over the course of the marriage, Arthur had built a real estate business with properties worth over $20 million.  Among other things, the MSA awarded Bonnie 11 parcels of real property as her sole and separate property.  It allocated a similar number of properties to Arthur.  The MSA provided that both parties assumed all debts associated with the assets allocated to them.  Similarly, it provided that all real estate was allocated to the parties subject to existing mortgages, liens, and encumbrances.  Arthur represented and warranted in the MSA that he had not "encumbered or hypothecated" several of the subject properties allocated to Bonnie.  The parties waived "[a]ll other claims, including but not limited to, claims for re-imbursement, breach of fiduciary duty and the like."

---

[1]    In accordance with the convention in marriage cases, we will refer to the parties by their first names.  (E.g., *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

2

On the form memorializing the MSA, the parties checked the box indicating: "The orders agreed to herein shall be included in a judgment or further judgment to be filed herein." They also checked boxes indicating they waived "their rights to a trial and to notice of trial for the purpose of having the court grant a judgment pursuant to the terms of this agreement which may be heard by a court commissioner sitting as judge pro tem"; waived the right to appeal; waived the right to request a statement of decision; and waived the right to move for a new trial.

Shortly after signing the MSA, the parties signed and recorded an interspousal transfer deed to effect the allocation of properties set forth in the MSA.

On November 3, 2008, Arthur filed a motion to enforce the MSA. The court set a hearing in December 2008. According to Arthur's declaration in support of the motion, Bonnie had control over their property management business, and he had been shut out and was living on spousal support for the last six years. He asserted that she was denying him control over the properties that the MSA awarded to him, including by denying him their rental income. The record does not contain a ruling on Arthur's motion to enforce the MSA.

In September 2009, Bonnie filed a motion for joinder of Theresa Jean Cundall as a claimant to the dissolution proceeding, which the court granted. Bonnie was informed and believed Cundall was Arthur's girlfriend. Bonnie's supporting declaration averred as follows. In December 1994, Arthur encumbered six parcels of real property that were community property but held in his name. He took out a loan secured by a promissory note and deed of trust encumbering the properties. The loan was in the principal sum of $218,000, but the lien on the encumbered properties had grown to approximately $754,000 by the time Bonnie filed her motion. The beneficial interest in the lien had transferred twice since 1994. Cundall was the current lien holder. Bonnie only discovered the lien in April 2009 when she tried to sell one of the encumbered properties, which the MSA allocated to her in the division of property. In total, the MSA had allocated five of the six encumbered

3

properties to Bonnie.[2]  Arthur had never disclosed this encumbrance on the properties to Bonnie.  Indeed, his preliminary declaration of disclosure (Judicial Council of California forms FL-140 and FL-142) did not list this debt, and he also represented in the MSA that he had not encumbered the properties allocated to her.  Bonnie asked Cundall to remove the lien on the property, and Cundall refused.  Bonnie believed the lien was a sham and Arthur was using Cundall as a "straw man" to extort additional assets from Bonnie.

According to the verified complaint for joinder that Bonnie submitted with her motion (joinder complaint), Mid-Century Insurance Company was the original beneficiary of the promissory note and deed of trust representing the lien against the encumbered properties.  In 2000, Mid-Century Insurance Company assigned its beneficial interest in the promissory note and deed of trust to George Granby, who is Arthur's first cousin and an attorney.  In June 2008, Granby assigned his beneficial interest in the same to Cundall.  Bonnie alleged both Granby and Cundall were acting as straw men for Arthur, and neither had paid any consideration for the promissory note and deed of trust.  Bonnie discovered the lien on her encumbered property during a title search as she was in escrow for the sale of the property.  Cundall refused to remove the lien for no payment.  Instead, she offered to take 50 percent of the value of the lien (or 50 percent of approximately $754,000) as full payment of her security interest.  Bonnie's joinder complaint against Cundall sought to quiet title against Cundall's adverse claims and to cancel Cundall's promissory note and deed of trust encumbering the properties.

In March 2010, Bonnie filed a motion to remove or expunge Cundall's lien on Bonnie's encumbered properties and to enter a judgment incorporating the MSA.  If the court refused to expunge the lien, she requested that the court order Arthur to pay off the lien himself.  Bonnie's memorandum of points and authorities advised the court that "all of the facts relating to this motion have not been ascertained.  Some discovery needs to be

---

[2]      Bonnie's supporting declaration actually stated that the MSA awarded her four of the six encumbered properties, not five.  That appears to have been an error, as later on, the parties consistently assert that the MSA awarded her five of the encumbered properties.

4

completed before this case is ready to be heard." The record does not contain a ruling on this motion.

## 2. *Complaint in the Civil Action*

In July 2010, Bonnie filed a civil action against Arthur and Cundall. In July 2011, the judge in the civil action found the civil action and the dissolution action to be related. The judge transferred the civil action to the family law court. Bonnie's second amended complaint (SAC) alleged causes of action for intentional misrepresentation, concealment, constructive fraud, slander of title, and conspiracy. Bonnie based the SAC on the same facts alleged in her joinder complaint in the dissolution action—that is, Arthur had encumbered properties allocated to her, had caused Mid-Century Insurance Company to assign its beneficial interest in the lien to Granby, and then had caused Granby to assign the same to Cundall, all without Bonnie's knowledge. Bonnie also alleged she agreed to the MSA in reliance on Arthur's false statements and omissions. Specifically, he misrepresented that he had not encumbered the properties allocated to her and failed to disclose the existence of the lien against the properties. The SAC further alleged that Cundall had foreclosed on Bonnie's encumbered properties. Cundall had executed a declaration of default avowing that the loan secured by the promissory note and deed of trust had become due and was unpaid ($218,000 plus interest). Cundall directed the trustee under the deed of trust to sell the encumbered properties to satisfy the debt. The trustee's sale occurred in July 2010, and Cundall allegedly purchased the encumbered properties for $571,963.42. Thus, Cundall held title to five of the properties awarded to Bonnie in the MSA.

## 3. *Trial on the Related Actions*

A bench trial took place in late September to early October 2014. Bonnie's trial brief asserted there were three interrelated matters for trial.

First, the court had to adjudicate reserved issues not determined by the status-only judgment in the dissolution action. These included a claim that Arthur breached his fiduciary duties to her, a claim to set aside, rescind, or cancel in part the MSA, property characterization and division, and a request for sanctions against Arthur. Bonnie's trial brief argued, among other things, that the MSA was invalid because Arthur obtained her consent

5

through fraud and breach of fiduciary duty, it was invalid for a failure of consideration, and permitting the MSA to stand would prejudice the public interest. She also argued equitable doctrines such as equitable estoppel and unclean hands should prevent him from enforcing the MSA.

Second, the court had to adjudicate Bonnie's causes of action against Cundall in the joinder complaint in the dissolution action. Third, the court had to adjudicate her causes of action against Arthur and Cundall in the civil action.

Bonnie maintained that, with the exception of property characterization and division, all of these issues for adjudication arose from Arthur's failure to disclose that he had encumbered properties allocated to Bonnie, and Arthur's and Cundall's subsequent conduct in foreclosing on Bonnie's properties.

## a. Discussions Regarding the Judgment on Reserved Issues

At the start of trial, the court addressed the MSA and whether it had been incorporated into a judgment on reserved issues in the dissolution action. The court asked whether any party was trying to enforce the MSA as a judgment under Code of Civil Procedure section 664.6.[3] Counsel for Arthur stated, "Well, we are," and indicated he and Bonnie's counsel had both tried to do that in the past, but the judge who had formerly presided over the matter said "we didn't need a judgment because we already had [a judgment]." According to counsel, the prior judge theorized that the MSA itself was the judgment. Arthur's counsel informed the court he had a proposed judgment prepared, and it was the same judgment he had served on Bonnie's counsel years ago, during his previous efforts to incorporate the MSA into a judgment. The court asked Bonnie's counsel whether she wanted to enter Arthur's proposed judgment. Her counsel replied, "No," and that Bonnie wanted to set aside the MSA. The court and Bonnie's counsel then had the following exchange:

---

**3**     Further undesignated statutory references are to the Code of Civil Procedure.

"The Court: You don't want me to enter the marital settlement agreement, enter the judgment and charge Mr. Corona with the trust deeds—with the value of the trust deeds?

"[Bonnie's Counsel]: No, Your Honor.

"The Court: Okay. So we're going to start from scratch?

"[Bonnie's Counsel]: Yes, Your Honor."

Arthur's counsel responded by arguing that the MSA resolved all the issues in the dissolution action, and Bonnie had never moved to set aside the MSA. There was nothing, therefore, before the court in the dissolution action. The court asked if Arthur was effectively making an oral motion under section 664.6 to enter a judgment based on the MSA.[4] Counsel agreed that was the case. Bonnie's counsel argued the MSA should be set aside, explaining his trial brief referenced the facts that would justify this relief. By the end of the hearing, after more argument and after the court had recessed to allow counsel to speak to their clients, Bonnie's counsel stated that she was willing to enter a judgment based on the MSA, so long as the court removed the encumbered properties from those allocated to Bonnie, "with the express understanding that the [MSA], with that caveat, would not be balanced anymore, because it was not—it was not—it's not a bargained-for agreement." But Bonnie wanted to keep all the other properties allocated to her in the MSA, and she still wanted the remedies sought in her joinder complaint and civil action. Arthur's counsel did not agree with that proposal, arguing again that the MSA already resolved the issues encompassed in it, and there was no "triable issue of fact." The court did not make a decision about entering a judgment incorporating the MSA, indicating it needed more time to think through the issue.

---

**4** Section 664.6 states in pertinent part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

The following day, the court stated that it had reviewed the file and concluded the prior judge took Arthur's November 2008 motion to enforce the MSA off calendar because Arthur did not appear. Further, the court concluded from its review that the prior judge also took off calendar Bonnie's March 2010 motion to enter a judgment "pursuant to stipulation of the parties." After setting forth that history, the court stated as follows:

"So here's, I think, where we are. I think what I do is I enter the judgment. I don't carve anything out of the judgment. I think I enter the judgment. So then the judgment gets entered. There's no motion to set it aside. There's no motion not to. I have a settlement at the time of trial, a complete and full settlement at the time of trial. [¶] I think that Mr. Rombro [(Bonnie's counsel)], at that point, doesn't have—there's no motion to set the judgment aside. But if he filed one, I don't think he has grounds because I think to set it aside—because I think the statute of limitations has passed because she's clearly known for longer than two or three years that the settlement agreement talks about these—that there's no lien on any of these properties."

Elsewhere, the court acknowledged that its belief about the timeliness of Bonnie's challenge to the MSA was based on an assumption that the facts Arthur's counsel had argued were true. ("[A]ssuming that's all true, the title search shows these liens, assuming all of those things which I'm going to take on an offer of proof basis that you can prove up if you had to, then yes. She's past the time on a known or should have known standard about the liens.") The court recessed to give both parties the opportunity to look at Arthur's proposed judgment on reserved issues to ensure that it paralleled the language of the MSA, with the understanding that Bonnie did not want the court to enter the judgment and was reserving her rights in that respect. It did not enter the judgment that day, but proceeded to opening statements and the first witness.

The next day of trial, October 2, 2014, the court returned to the judgment on reserved issues. The judgment had places for the parties and their counsel to sign, as well as the court. The court asked Bonnie's counsel if he was going to sign it, and counsel replied, "No, you can enter it." The court signed and entered the judgment on reserved issues on

that date, as did Arthur and his counsel.  The spaces for Bonnie's and her counsel's signatures remained blank.  The trial proceeded on that day and for two more thereafter.

Bonnie filed a timely notice of appeal from the judgment on reserved issues in the dissolution action.

**b.  The Court's Statement of Decision After Trial**

Bonnie does not purport to appeal from a judgment or the statement of decision in the civil action or the same on the joinder complaint.  We nevertheless summarize the court's statement of decision after trial on these matters because it is pertinent to our resolution.

The court's final statement of decision, filed in December 2014, "augment[ed] the tentative decision" and did not change it, to the extent the tentative and final decisions were consistent.  Between the tentative and final decisions, the court found and ruled as follows.

Dissolution Action:  In 2008, the parties reached a full resolution of the dissolution action through a signed and filed MSA.  Both parties brought motions to enforce the MSA and enter judgment, both of which the court never formally ruled on, according to minute orders in the file.  The court converted the MSA into a judgment at the beginning of trial.  "At the time of the trial, neither party sought to set aside the MSA; again both parties wished to have the MSA enforced.  In fairness, [Bonnie] took issue with a limited number of provisions and argued that she had been defrauded into signing the MSA.  Importantly, however, neither party, at any time, brought a request to the court to set aside the MSA, and from the evidence at trial," the parties had fully performed under the MSA.  "The MSA disposed of all matters in the dissolution action," and there was "nothing left in the dissolution case to try."  Because Bonnie had not moved to set aside the judgment, the judgment stood as entered.  The court took "no position on any issues of judgment set aside or enforcement," but should either party move to set aside any portion of the judgment or enforce its terms, the court would address the issues presented.

Joinder Complaint:  The prior judge had permitted Bonnie to join Cundall in the dissolution action only after the parties had fully settled the matter in the MSA.  Regardless of the prior judge's ruling, there was no dispute to intervene into at that point.  Therefore, the court declined to make an award on the joinder complaint.

9

Civil Action:  As to Arthur, Bonnie had no remedy against him in the civil action, as opposed to the dissolution action.  All of her causes of action against him sounded in breach of fiduciary duty and properly belonged in the dissolution action.  The Family Code provided sufficient remedies against him such that recovery in the civil action was inappropriate.  The court, therefore, rendered a defense verdict for Arthur in the civil action.

Still, the court noted that "[t]he real, underlying issue in this matter" was Bonnie's claim that Arthur essentially defrauded her at the time of the MSA.  The court also noted that Bonnie sought many findings on issues that would be relevant to a set aside motion, but not to the civil action.  Because Bonnie had not moved to set aside the judgment on reserved issues, the court declined to make any such findings at that time, and explained that it would resolve Bonnie's claims once she brought a motion to set aside the judgment.  The court observed there was evidence supporting *both* parties on the issue of fraud or breach of fiduciary duty.  Some of that evidence showed Bonnie had knowledge of the lien on the encumbered properties at the time she signed the MSA and also shortly after signing it, when she had a title report run on the properties.

As to Cundall, there was no evidence she made any representations to Bonnie, let alone intentional misrepresentations.  There was also insufficient evidence to hold Cundall liable for slander of title.  She was not aware of the MSA, and the evidence showed she purchased the promissory note and deed of trust from Granby in an attempt to secure a loan she made to Arthur.  In other words, Cundall was a good faith purchaser, and she purchased before the parties entered into the MSA.  She successfully foreclosed on the promissory note and deed of trust.  Further, there was no evidence that Cundall conspired with Arthur or anyone else to injure Bonnie.  The court construed the causes of action for concealment and constructive fraud as brought against Arthur only.  Overall, the court rendered a verdict for Cundall on the civil complaint.

In sum, the court held that the right of recovery for Bonnie, to the extent she had one, resided solely against Arthur "in a modification, set aside, or enforcement action of the dissolution judgment."  But the court took "absolutely no position on any such request"

10

because it was not before the court. Moreover, there was insufficient evidence before the court to determine whether it should set aside all of the MSA or only some.

After the court issued its statement of decision, Bonnie filed objections to it specifying the controverted issues on which she believed the court had not ruled. The court responded by minute order that there was nothing more on which the court could rule until Bonnie filed a set aside motion.

## 4. *Bonnie's Motion to Set Aside the MSA and Judgment*

Following the court's repeated instruction, in March 2015, Bonnie filed a motion to set aside the MSA and the judgment on reserved issues. Much as she had at the time of trial, Bonnie insisted that she did not know of the lien on the encumbered properties when she agreed to the MSA, and Arthur never disclosed them to her, even in his declaration of disclosure during the dissolution action. She argued that the court should set aside the judgment on reserved issues and the MSA based on her mistake of fact.

Arthur responded that, consistent with his trial testimony, Bonnie and their son, Steve Corona, had exclusive possession and use of his business office since 2001. As such, Bonnie and Steve had possession and control of the records showing the lien on the encumbered properties, and when Arthur prepared his disclosures for the dissolution action, he did them from memory. He did not have sufficient knowledge to break down his total debts by property. Arthur also pointed to a 1999 letter from his former accountant to Steve, which attached copies of the promissory note and deed of trust encumbering the subject properties. He insisted that this evidence showed Bonnie had knowledge of the encumbrance because she relied on Steve to handle her business affairs. Further, when Arthur stated in the MSA that the properties allocated to Bonnie were not encumbered, he thought the question was whether they had been encumbered since the time the dissolution action began—not if they had *ever* been encumbered. Arthur insisted that he never attempted to mislead Bonnie.

The court denied Bonnie's set aside motion on procedural grounds. The court noted that there was an evidentiary dispute regarding what both parties knew when they signed the MSA and whether Bonnie knew of the lien on the encumbered properties. But Bonnie had

appealed from the judgment on reserved issues, the very judgment that Bonnie now wanted to set aside. The court ruled that until this court "more clearly define[d] the procedural posture of this case," it could not make any further orders regarding the MSA or judgment.

Bonnie filed a timely notice of appeal from the court's order denying her set aside motion. We consolidated this appeal with her appeal from the judgment on reserved issues for purposes of argument and decision.

## DISCUSSION

Section 664.6 allows the court to enter judgment pursuant to the terms of a settlement "upon motion." Bonnie contends the court erred in entering the judgment on reserved issues because neither party moved to enter the judgment, and the court should have considered her defenses to the MSA before reducing it to a judgment.

"Section 664.6 permits the trial court judge to enter judgment on a settlement agreement without the need for a new lawsuit. [Citation.] It is for the trial court to determine in the first instance whether the parties have entered into an enforceable settlement." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) "A section 664.6 motion is appropriate . . . even when issues relating to the binding nature or terms of the settlement are in dispute, because, in ruling upon the motion, the trial court is empowered to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905.) The settlement agreement "must embody an enforceable contract between the parties: 'A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.' " (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35-36 (*Sully-Miller*); see *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1459-1461 [trial court erred in entering judgment on settlement agreement when no meeting of the minds on material terms occurred].) This is equally true of an MSA, the species of settlement agreement at issue here. The court may set it aside based on traditional contract law. (*In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22.) The court also has "the power to invalidate the MSA if it

12

was inequitable. Family law cases 'are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity.' " (*Id.* at pp. 22-23.)

"In ruling on a motion to enter judgment the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement. [Citation.] Trial judges may consider oral testimony or may determine the motion upon declarations alone." (*Terry v. Conlan, supra*, 131 Cal.App.4th at p. 1454.) We review a trial court's factual findings on the enforceability of the settlement agreement for substantial evidence. (*Osumi v. Sutton, supra*, 151 Cal.App.4th at p. 1360.) But we review the court's decision de novo for errors of law. (*Sully-Miller, supra*, 103 Cal.App.4th at p. 35.) For instance, when "the principal claim of error 'raises a question of law concerning the construction and application of [Code of Civil Procedure] section 664.6[,] . . . it requires independent appellate review.' " (*Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1166.)

In this case, Bonnie contends a party had to move to enter judgment based on the MSA, while Arthur contends "upon motion" (§ 664.6) means either the parties could move *or* the court, on its own motion, could enter judgment. To begin with, the record demonstrates the court did not act solely on its own motion. Both parties, at one point in years past, had moved to enter the MSA as a judgment or enforce it. In Bonnie's case, she coupled her request with a request to expunge the liens on the encumbered properties awarded to her. Neither of those written motions was pending at the time of trial. But at the very least, at the time of trial, Arthur was making an oral motion to reduce the MSA to a judgment. The court asked whether he was making such an oral motion, and he replied affirmatively.

Regardless of who moved to enter judgment based on the MSA—Arthur or the court—the court erred in entering judgment while declining to rule on Bonnie's arguments in opposition. The court made plain it was not ruling on the merits of her arguments to rescind, set aside, or cancel parts of the MSA because she had not filed a set aside motion. This was apparent from the comments it made before entering the judgment on reserved issues, as well as its later statement of decision, in which it declined to consider any relief against Arthur because Bonnie had not filed a set aside motion. The court suggested at

13

various points that there was evidence favoring both parties' positions and that Bonnie might have a problem setting aside the MSA because of statute of limitations issues. But rather than just highlighting the issues, the court should have determined whether the parties entered into an enforceable settlement agreement when considering whether to reduce the MSA to a judgment under section 664.6 (*Osumi v. Sutton, supra*, 151 Cal.App.4th at p. 1360), particularly because Bonnie opposed entering the judgment. The court's decision to enter judgment on the MSA should have disposed of Bonnie's arguments based on contract law and equitable principles (*In re Marriage of Egedi, supra*, 88 Cal.App.4th at pp. 22-23), and any opposing arguments Arthur might have based on the statute of limitations or the various waivers Bonnie agreed to in the MSA. As the trier of fact, the trial court should be the first tribunal to conduct these fact-intensive inquiries, not us. In short, we see no need to have required Bonnie to file a set aside motion, when the issues had been brought up in the context of a request to enter the judgment, and the parties could have presented the relevant evidence and arguments during the scheduled trial proceedings.

The court's refusal to resolve conflicts in the evidence and rule on the merits means that, in effect, we have no findings to review for substantial evidence. We are dealing with something more in the nature of a legal error in the application of section 664.6.

Moreover, Bonnie suffered prejudice from the error because she was unable to obtain any relief at all against Arthur. From the court's suggestion that some evidence favored Bonnie's position, we think it reasonably probable she might have obtained relief, had the court considered it. And the fact that Bonnie filed a set aside motion after trial does not necessarily eliminate the harm caused by the court's failure to consider her arguments prior to entering judgment. Under the Code of Civil Procedure and the Family Code, the court may set aside a judgment for mistake, inadvertence, surprise, excusable neglect, actual fraud, perjury, duress, mental incapacity, or failure to comply with the disclosure requirements of the Family Code. (Code Civ. Proc., § 473, subd. (b); Fam. Code, § 2122.) But if a settlement agreement has not merged into a judgment, a party may assert contract remedies beyond these grounds for setting aside judgments. (Fam. Code, § 2128, subd. (b) ["Nothing in this chapter changes existing law with respect to contract remedies where the

14

contract has not been merged or incorporated into a judgment."].) Once merged into a judgment, the contractual warranties and obligations imposed by a settlement agreement do not survive and are not enforceable as such. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1221 [refusing "to imply a covenant of good faith and fair dealing—and corresponding duty—into the terms of the parties' merged judgment"].) Thus, the arguments that Bonnie might have asserted before the MSA merged into the judgment were arguably broader than those she might have asserted in a postjudgment set aside motion.

Arthur contends Bonnie waived her objections to incorporating the MSA into a judgment when the court asked if Bonnie's counsel would sign the proposed judgment on reserved issues, and counsel answered, "No, you can enter it." This was no waiver. By declining to sign it, counsel indicated his continuing objection to entering the judgment. Counsel's statement that the court could enter the judgment was obviously a recognition that the court had made its decision and any further objections would have been futile. Bonnie sufficiently preserved her objections to the court's course of action.

In view of our finding of prejudicial error, we reverse the judgment on reserved issues and remand for the court to consider Bonnie's argument that all or part of the MSA was not enforceable. Our reversal of the judgment on reserved issues renders moot Bonnie's motion to set aside that judgment in the trial court. We will therefore vacate the court's order denying the set aside motion, and we need not consider whether the court had jurisdiction to consider the set aside motion after Bonnie perfected her appeal from the judgment.

At oral argument, Arthur suggested that the doctrine of collateral estoppel should prevent us from reversing and remanding for the court to rule on Bonnie's arguments to rescind or set aside the MSA. He asserted the trial on Bonnie's civil complaint already resolved all of her arguments to set aside the MSA. We are not persuaded by this argument.

The doctrine of collateral estoppel gives conclusive effect to a determination of an issue in a former proceeding. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701-702.) "Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be

identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]  The party asserting collateral estoppel bears the burden of establishing these requirements." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

To begin with, the court expressly stated several times that it was taking no position on Bonnie's arguments but would do so at a later date, when she brought a motion to set aside the judgment.  A remand for further proceedings is appropriate precisely because the court declined to resolve on the merits Bonnie's arguments for setting aside the MSA.  Consequently, the court did not "necessarily decide[]" these issues in the trial on Bonnie's civil complaint (*Lucido v. Superior Court, supra*, 51 Cal.3d at p. 341), nor are the issues to be decided "identical," when the court declined to decide them in the former proceedings.  Both are requirements for collateral estoppel to apply.

Furthermore, the trial on the civil complaint is a "former" proceeding at this point only because the court entered the judgment in the dissolution action at the beginning of trial, over Bonnie's objections.  Absent this error, all of these issues would have been decided together.  There is no evidence that Bonnie intended to game the system by getting two bites at the apple.  If it were up to her, the court would have considered her arguments at the time of trial, and collateral estoppel would not be even an arguable issue.

But to the extent Arthur was simply expressing a concern about judicial economy, his point is a reasonable one.  In its statement of decision, the trial court anticipated this concern.  The court noted:  "Should either party bring an RFO [(request for order)] to set aside any portion of the judgment or to enforce the judgment's terms, the court will certainly address the issues presented.  Of some concern, however, is judicial economy.  Should either party bring an action, it would be inappropriate to retry the issues that were fully addressed in the most recent trial.  Court and counsel should confer as to the most time efficient way to address any follow-on RFO."

16

We share the court's concern about judicial economy.  For this reason, we are not suggesting that the court conduct a new trial on remand, with the same witnesses testifying on the same matters to which they already testified during trial in the civil action.  As we discussed above, in ruling on motions to enter judgment, the court may consider oral testimony or rely on declarations alone.  (*Terry v. Conlan, supra*, 131 Cal.App.4th at p. 1454.)  The civil action arose from the same set of facts as Bonnie's arguments to set aside or rescind the MSA.  The court may rely on the evidence adduced at trial in the civil action to resolve Bonnie's arguments and merely request that the parties submit briefing citing that evidence.  Or, it may decide that Bonnie should be permitted to present additional oral testimony.  We leave that decision up to the trial court.

## DISPOSITION

The judgment on reserved issues in the dissolution action (BD386697) is reversed.  The order denying Bonnie's motion to set aside that judgment is vacated.  On remand, before reducing the MSA to a judgment, the court shall consider Bonnie's arguments that the MSA was not valid or enforceable in whole or in part.  The court may conduct whatever proceedings its deems necessary to determine the validity or enforceability of the MSA and to determine the remedies to which Bonnie is entitled, if any.  Bonnie shall recover costs on appeal.

Bonnie has not appealed from the judgment in the civil action (BC440915), which the court deemed related to but not consolidated with the dissolution action, and that judgment is not before us.  Accordingly, our disposition does not affect the judgment in the civil action.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.                    RUBIN, J.

17